UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NEW YORK

---

SANDRA MEIDENBAUER

                        Plaintiff

v.                                                 Civil Action No. 1:13-cv-799S (F)
ZENITH ACQUISITION CORP.,
DAVID PARIS,
HOWARD HORNBLASS

                        Defendants

---

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
DEFENDANTS, ZENITH ACQUISITION CORP.,
DAVID PARIS AND HOWARD HORNBLASS
FOR PARTIAL SUMMARY JUDGMENT**

                                                       GROSS, SHUMAN, BRIZDLE &
                                                         GILFILLAN, P.C.
                                                          Hugh C. Carlin, Esq.
                                                          Katherine M. Liebner, Esq.
                                   *Attorneys for Defendants Zenith Acquisition*
                                   *Corp., David Paris and Howard Hornblass*
                                   465 Main Street, Suite 600
                                   Buffalo, New York  14203
                                   Tel: (716) 854-4300
                                   Fax: (716) 854-2787
                                   Email: hcarlin@gross-shuman.com
                                                kliebner@gross-shuman.com

## PRELIMINARY STATEMENT

This memorandum of law is submitted on behalf of the Defendants, Zenith Acquisition Corp., David Paris and Howard Hornblass[1] ("Defendants") in support of their motion for partial summary judgment to dismiss the complaint as against Defendant, David Paris ("Mr. Paris") pursuant to Fed. R. Civ. P. 56.

The issue in this summary judgment motion is narrow and discrete – namely, whether Mr. Paris constitutes an "employer" of Plaintiff as that term is defined under the Fair Labor Standards Act ("FLSA") and New York Labor Law overtime laws.[2] After full and complete discovery, the record reveals absolutely no basis to find that Mr. Paris was an employer of Plaintiff. Rather, the evidence, including Plaintiff's own testimony, unequivocally demonstrates that Mr. Paris lacked the requisite operational control over the day-to-day activities of Defendant, Zenith Acquisition's Corp. and Plaintiff's terms of employment.

Accordingly, Defendants respectfully request partial summary judgment dismissing the complaint against Defendant, David Paris, in its entirety.

## STATEMENT OF FACTS

Zenith Acquisition Corp. ("Zenith") was a receivables management firm that, at the height of its operation, employed around 100 persons and handled 400,000 accounts for clients involving approximately $720 million (*Ex. C*, Hornblass Dep., pp. 15, 40, 116-117) (*Ex. B*, Paris Dep., pp. 32-33). Zenith has been out of business for over three years, having sold its assets in 2012. (*Ex. C*, Hornblass Dep., pp. 14-15, 39). Mr. Paris was a shareholder and CEO/President of Zenith. (*Ex. B*, Paris Dep., p. 28; *Ex. C*, Hornblass Dep., pp. 12-13, 18). His duties

---

[1] On December 4, 2015, Howard Hornblass filed a petition for protection under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Western District of New York, Case No. 15-12594.
[2] This motion does not address Plaintiff's contention that she was misclassified as an exempt employee under the FLSA and NYLL. However, Defendants strongly dispute any such claim and assert that the record reveals, at a minimum, material issues of fact regarding Plaintiff's status as an exempt employee.

1

exclusively involved "business development" by negotiating the purchase and sale of debt portfolios; communicating with banks and obtaining the portfolios that he purchased consumer receivables; and ensuring regulatory compliance related to debt buying, including state licensing, insurance, maintenance of organizational charts, reference and certifications, and Zenith's policies and procedures regarding payment posting and processes for call-ins (not for internal employment policies). (*Ex. B*, Paris Dep., pp. 34-35, 54, 58-59, 64). Zenith's managers acted as a collective team on business decisions and individual officers did not unilaterally possess control over Zenith. (*Ex. C*, Hornblass Dep., p. 113); (*Ex. B*, Paris Dep., pp. 70-71, 100) (When asked whether he had the ability or authority to delegate control over day-to-day operations, Mr. Paris stated the company ran as a team, and "I didn't delegate it because it wasn't mine to delegate.").

Drilling down into the details of the record, it is clear that Mr. Paris did not have operational control or input in the day-to-day operations of Zenith. Mr. Paris was not responsible for payroll, which was handled by an outside entity Paychex, and he never saw payroll reports (*Ex. B*, Paris Dep., pp. 52, 94); he was not involved in Zenith's tax returns, which were prepared by Ray Crane, the accountant (*Id.*, p. 97); he did not have the authority to hire/fire (*Id.*, p. 108) ("In fact, I don't recall one single time when I hired or fired an individual at Zenith"); he did not have control over employee complaints and would turn over any employee complaints to other management (*Id.*, pp. 73, 100); he was not responsible for maintenance of the key fob/time swipe system of the employees (*Id.*, p. 49); he did not deal with the day-to-day issues of leasing the space (*Id.*, p. 51); he was not responsible for and was not involved in maintenance of employee's personnel files (*Id.*, pp. 72-73); he did not have direct access to the employee personnel files as they were behind locked doors (*Id.*, p. 73-74); he was not advised on

a day-to-day basis if an employee was absent, unless in the circumstance where there was a staff meeting and someone was not there (*Id.*, pp. 74-75); he did not handle the 401K plan (*Id.*, p. 104). As Mr. Paris testified: "I was on the road a lot, I was on the phone a lot. Howard [Hornblass] and these guys ran the business so if I say I don't recall it's because I was really disengaged on the day-to-day basis." (*Id.*, p. 99). Mr. Paris further testified that "on a 30,000 foot level I sometimes reviewed certain things when there were issues. But when things were running smoothly I wasn't that involved." (*Id.*, p. 70).

Mr. Paris's lack of operational control extended to Plaintiff's employment. Plaintiff worked at Zenith from March 2006 – May 2012 as part of its bookkeeping and general accounting department (*Ex. C*, Hornblass Dep., pp. 71-72) (*Ex. A*, Meidenbauer Dep., p. 43-44).[3] Mr. Paris did not participate in the hiring/interview process for Plaintiff (*Ex. B*, Paris Dep., pp. 15, 107). Mr. Paris was not involved in determining the rate and method of Plaintiff's payment as this was part of a joint deliberation by Howard Hornblass (Zenith's CFO and Vice President), Karen LaBelle (Plaintiff's direct supervisor in accounting), and Ray Crane (Zenith's accountant) as to the details of her employment. (*Ex. B*, Paris Dep., p. 15). Plaintiff also testified that she did not discuss her hourly rate and the annualized salary for her position with Mr. Paris, but rather with Michelle Hornblass, the HR manager. (*Ex. A*, Meidenbauer Dep., p. 39). She was advised of increases to her salary by Howard Hornblass. (*Ex. A*, Meidenbauer Dep., pp. 39-40). Plaintiff further acknowledged that Mr. Paris did not supervise or assign any projects or work to her, take part in performance reviews, or act as a direct supervisor to her throughout her employment at Zenith (*Ex. A*, Meidenbauer Dep., pp. 133-134). Plaintiff testified that when she would identify a problem with an account, she would not go to Mr. Paris but "would advise Karen [LaBelle]

---

[3] Although not relevant to this motion, it is worth noting that Plaintiff was fully aware that she was classified as a salaried exempt employee from the outset of her employment with Zenith yet never raised with Defendants any issue about such classification during her entire employment. (*Ex. A*, Meidenbauer Dep., p. 40).

3

and/or Howard [Hornblass] that something was in a wrong account or whatever the situation was." (*Ex. A*, Meidenbauer Dep., pp. 82, 86). She also stated she controlled her work flow and her daily work priorities, and no one told her what to do on a daily basis. (*Ex. A*, Meidenbauer Dep., pp. 81-82). Plaintiff had flexibility and "came and left at her own discretion." (*Ex. C*, Hornblass Dep., p. 136).

Given Mr. Paris's complete lack of involvement in Plaintiff's employment, it comes as no surprise that both Plaintiff and Mr. Paris testified that their interaction with each other was "very minimal" and not on a day-to-day basis. (*Ex. A*, Meidenbauer Dep., p. 107) (*Ex. B*, Paris Dep., p. 108) ("on a day-to-day basis I didn't interact with her professionally. Again, when she was on a smoke break or something and I walked outside, I might say hello").

## APPLICABLE LEGAL STANDARD

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it "might affect the outcome of the suit under governing law." *Baumer v. Ingram Long Term Disability Plan, 803 F. Supp. 2d 263, 267 (W.D.N.Y. 2011)* (J. Skretny) (citing *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)*). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion." *Id.* (citing *Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)*; Fed. R. Civ. P. 56(c)). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." *Id.* (citing *Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.1991)*). Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could

4

be drawn in favor of the opposing party, summary judgment is improper." *Id.* (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82–83 (2d Cir. 2004)). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* (citing *Anderson*, 477 U.S. at 249).

## ARGUMENT

### I. DEFENDANT DAVID PARIS DOES NOT QUALIFY AS AN "EMPLOYER" UNDER FEDERAL AND NEW YORK OVERTIME LAWS.

There can be no legitimate dispute that David Paris does not qualify as an "employer" of Plaintiff under the FLSA or the NYLL and, therefore, cannot be deemed personally liable for any of Plaintiff's alleged claims.[4]

"In cases where a plaintiff-employee is employed by a corporation, individual officers or directors of the corporation may be deemed employers under the FLSA where the individual has overall operational control of the corporation, possesses an ownership interest in it, controls significant functions of the business, or determines employees' salaries and makes hiring decisions." *Tracy v. NVR, Inc.*, 667 F. Supp. 2d 244, 246 (W.D.N.Y. 2009). It is the plaintiff's burden of demonstrating that an alleged employer-defendant has "some degree of individual involvement in a company in a manner that affects employment-related factors such as workplace conditions and operations, personnel, or compensation . . . ." *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013).

When evaluating "whether an individual within a company that undisputedly employs a worker is personally liable for damages as that worker's 'employer,'" New York courts apply a four-part economic realities test crafted by the Second Circuit. *Irizarry*, 722 F.3d at 105-17.

---

[4] While there may be slight differences between the definitions of "employer" under the FLSA and the NYLL, courts have consistently held that the NYLL embodies the same standards for joint employment as the FLSA. *Chen v. St. Beat Sportswear, Inc.*, 364 F. Supp. 2d 269, 278 (E.D.N.Y. 2005).

5

This test looks to the totality of the circumstances on a case-by-case basis. *Id. at 105-17*; *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). The four-part test includes whether the purported employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry*, 722 F.2d at 105. These factors do not "comprise a rigid rule," but rather "a nonexclusive and overlapping set of factors to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." *Id. at 105*; *Herman*, 172 F.3d at 139.

Ultimately, the core question is whether a person has "operational control over employees", i.e., "if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Irizarry*, 722 F.2d at 110. An individual's ownership stake or official position in a company, standing alone, does not suffice to make that person an "employer" without some involvement in the company's employment of the employees. *Irizarry*, 722 F.3d at 99. There must be "some degree of individual involvement in a company in a manner that affects employment-related factors such as workplace conditions and operations, personnel, or compensation—even if this appears to establish a higher threshold for individual liability than for corporate 'employer' status." *Irizzary*, 722 F.3d at 109. "Evidence indicating an individual's direct control over the plaintiff employees" is not the "only evidence . . . to be considered"; "[i]nstead, evidence showing an individual's authority over management, supervision, and oversight of a company's affairs in general is relevant to the totality of the circumstances in determining the individual's operational control of the company's employment of the plaintiff employees." *Id. at 110*.

The Western District of New York decision in *Tracy v. NVR, Inc., 667 F. Supp. 2d 244, 247 (W.D.N.Y. 2009)* (J. Larimer) is instructive in highlighting what evidence is required to establish an individual's liability as an "employer" under the FLSA and NYLL. In *Tracy*, the Court denied a motion for leave to amend the complaint to add allegations of personal liability under the FLSA and NYLL against the corporate defendant's VP of Human Resources. The plaintiff's proposed amendment included allegations that the VP "has the authority to make decisions concerning human resources, training, payroll, employee hiring and firing, FLSA classification and benefits aspects of the [corporate employer's] business, and that he provides 'support' or controls policies which ultimately impact day-to-day operations, employees' work schedules and conditions of employment." *Tracy, 667 F.Supp.2d at 246*. Citing the four-part economic realities test, the Court found such proposed allegations insufficient as they were made upon information and belief without any supporting facts concerning the extent of the VP's alleged involvement in the corporation's hiring and/or firing processes or record-keeping policies. *Id. at 247*. Furthermore, the Court noted that the plaintiffs did not allege that they or anyone else were hired by the VP, or by any predecessor in his position, and the plaintiffs' allegations concerning the VP's level of control over their work schedules, conditions of employment, and compensation were even more attenuated as they only asserted that the VP's exercise of his supposed policy-setting powers as the Director of Human Resources in some way "support[ed]," or indirectly impacted, those aspects of their employment. *Id.* As such, the Court found that such allegations were simply insufficient to show the "chief human resources officer in an enormous, multi-billion dollar corporation scattered across hundreds of miles—had and exercised sufficient control over them to satisfy the economic reality test, or that he was otherwise their 'employer' for FLSA purposes." *Id.*

The Western District of New York's decision in *Tracy* provides a sure guide on what is necessary to attach individual liability under FLSA and NYLL. Simply asserting an individual's title and general involvement in hiring/firing, record-keeping policies, or policy-setting powers impacting employees is insufficient to even permit amendment to a pleading under the liberal standard of Rule 15(a). There must be actual evidence that the individual had operational control over the employee's terms of employment. *See also Gisomme v. Healthex Corp.*, 2014 W.L. 2041824, at *4 (E.D.N.Y. May 15, 2014) ("[P]laintiffs' conclusory allegations of Kearney's operational involvement and control of HealthEx and Courier and his alleged general power over various employment decisions are not sufficient to establish Kearney's status as plaintiffs' employer."); *Spiteri v. Russo*, 2013 W.L. 4806960 (E.D.N.Y. 2013) (granting summary judgment as to FLSA claim where it was determined that plaintiff was an independent contractor using four-part economic realities test because even though the defendants "arguably exercised some control over plaintiff, plaintiff primarily acted independently"); *Bravo v. Eastpoint Int'l, Inc.*, 2001 W.L. 314622, at *2 (S.D.N.Y. Mar. 30, 2001) (dismissing claim against fashion designer as employer under the FLSA because plaintiffs only alleged her status as the owner and chairperson of employer company and failed to allege any facts establishing her "power to control the plaintiff workers").

Turning to the facts of this case, it is evident that Mr. Paris does not qualify as Plaintiff's "employer" under the FLSA or NYLL in that he did not have the operational control over Zenith or Plaintiff's own employment. Mr. Paris's role almost exclusively encompassed drumming up business for Zenith by negotiating the purchase and sale of debt portfolios and ensuring regulatory compliance. (*Ex. B*, Paris Dep., pp. 34-35, 54, 58-59, 64). The overall operations was immense with more than 100 employees handling 400,000 accounts for clients involving

approximately $720 million. (*Ex. C*, Hornblass Dep., pp. 40, 116-117). As Mr. Paris testified: "I was on the road a lot, I was on the phone a lot. Howard [Hornblass] and these guys ran the business so if I say I don't recall it's because I was really disengaged on the day-to-day basis." (*Ex. B*, Paris Dep., p. 99). Mr. Paris further testified that "on a 30,000 foot level I sometimes reviewed certain things when there were issues. But when things were running smoothly I wasn't that involved." (*Id.*, p. 70).

Applying the Second Circuit's four-part economic realities test to the facts of this case, it is obvious that Mr. Paris does not qualify as Plaintiff's "employer" under the FLSA or NYLL. *Irizarry, supra*. With respect to the first factor, Mr. Paris did not have the power to hire and fire Zenith employees, he was not involved in the hiring/interview process for Plaintiff, and explicitly testified that "[i]n fact I don't recall one single time when I hired or fired an individual at Zenith." (*Ex. B*, Paris Dep., pp. 15, 108). Mr. Paris also did not have control over employee complaints which he would turn over to other management. (*Id.*, p. 73, 100).

With respect to the second factor, Mr. Paris did not supervise or control employee work schedules or conditions of employment, including for Plaintiff. Both Plaintiff and Mr. Paris testified that their interactions were "very minimal" and not on a day-to-day basis. (*Ex. A*, Meidenbauer Dep., p. 107) (*Ex. B*, Paris Dep., p. 108) ("on a day-to-day basis I didn't interact with her professionally. Again, when she was on a smoke break or something and I walked outside, I might say hello"). Plaintiff herself testified that Mr. Paris was not her direct supervisor, did not assign any projects or work for her, and did not participate in her performance reviews. (*Ex. A*, Meidenbauer Dep., pp. 133-134). Plaintiff further testified that when she would identify a problem with an account, she would not go to Mr. Paris but "would advise Karen [LaBelle] and/or Howard [Hornblass] that something was in a wrong account or whatever the

9

situation was." (*Ex. A*, Meidenbauer Dep., pp. 82, 86). She also stated she controlled her work flow and her daily work priorities, and no one told her what to do on a daily basis. (*Ex. A*, Meidenbauer Dep., pp. 81-82). Ultimately, Plaintiff had flexibility and "came and left at her own discretion." (*Ex. C*, Hornblass Dep., p. 136). Furthermore, Mr. Paris was not involved in other basic conditions of employment. He not responsible for payroll, which was handled by Paychex, and he never saw payroll reports (*Ex. B*, Paris Dep., pp. 52, 94); he was not involved in Zenith's tax returns, which were prepared by Zenith's accountant, Ray Crane (*Id.*, p. 97); he was not responsible for maintenance of the key fob/time swipe system of the employees (*Id.*, p. 49); he did not deal with the day-to-day issues of leasing the space (*Id.*, p. 51); he was not responsible for and was not involved in maintenance of employee's personnel files (*Id.*, pp. 72-73); he did not have direct access to the employee personnel files as they were behind locked doors (*Id.*, p. 73); he was not advised on a day-to-day basis if an employee was absent, unless in the circumstance where there was a staff meeting and someone was not there (*Id.*, pp. 74-75); and he did not handle the 401K plan (*Id.*, p. 104).

    With respect to the third factor, Mr. Paris had no input in determining the rate and method of payment for Plaintiff, which was determined by the joint interview team of Mr. Hornblass, Ms. LaBelle and Mr. Crane. (*Ex. B*, Paris Dep. p. 15). This is confirmed by Plaintiff's own testimony that, at the time of hire, she discussed the hourly rate and the annualized salary for her position at Zenith with Michelle Hornblass, the HR manager. (*Ex. A*, Meidenbauer Dep., p. 39). She also stated that she was advised of increases to her salary by Howard Hornblass, not Mr. Paris. (*Id.*, pp. 39-40).

    Finally, with respect to the fourth factor, the evidence clearly demonstrates that Mr. Paris was not responsible for and had no involvement in the maintenance of employment records. (*Ex.*

10

*B*, Paris Dep., pp. 72-73). The personnel files were kept with the Human Resources department, and Mr. Paris needed to consult with the other managers and business partners to have access to these records. (*Id.*, pp. 73-74).

Quite simply, the record cannot sustain a cause of action against Mr. Paris under the four-part Second Circuit economic realities test for purposes of the FLSA and NYLL overtime laws. The mere fact that Mr. Paris was an officer and shareholder of Zenith, and that he brought work into Zenith is woefully insufficient to attach personal liability. The evidence clearly shows that Mr. Paris lacked the operational control over Zenith and Plaintiff's employment and, as such, the complaint should be dismissed against him.

## CONCLUSION

Based on the evidence, Defendants respectfully request that this Court grant partial summary judgment dismissing the complaint as against Defendant, David Paris, in its entirety.

Dated:   Buffalo, New York
         December 7, 2015

>                                      GROSS, SHUMAN, BRIZDLE &
>                                      GILFILLAN, P.C.
>
>                                      By:  /s/ Katherine M. Liebner
>                                           Hugh C. Carlin, Esq.
>                                           Katherine M. Liebner, Esq.
>                                      *Attorneys for Defendants Zenith Acquisition Corp., David Paris and Howard Hornblass*
>                                      465 Main Street, Suite 600
>                                      Buffalo, New York  14203
>                                      Tel: (716) 854-4300
>                                      Fax: (716) 854-2787
>                                      Email: hcarlin@gross-shuman.com
>                                             kliebner@gross-shuman.com

## CERTIFICATE OF SERVICE

      I hereby certify that on December 7, 2015, the foregoing Memorandum of Law in Support of the Motion For Partial Summary Judgment on behalf of Defendants, Zenith Acquisition Corp., David Paris, and Howard Hornblass, was electronically filed with the Clerk of the District Court using its CM/ECF system, which then electronically notified the following CM/ECF participants on this case:

      Shelly A. Leonard, Esq.                sleonard@blauleonardlaw.com

                                          /s/ Katherine M. Liebner
                                      Katherine M. Liebner, Esq.

Doc #458679.2