UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SANDRA MEIDENBAUER,

                                                                              REPORT
                                    Plaintiff,                                and
                         v.                                          RECOMMENDATION

ZENITH ACQUISITION CORP.,                              13-CV-00799A(F)
MERCANTILE ADJUSTMENT BUREAU LLC,
DAVID PARIS, and
HOWARD HORNBLASS,

                                          Defendants.
_____

APPEARANCES:          BLAU LEONARD LAW GROUP, LLC
                      Attorneys for Plaintiff
                      SHELLY A. LEONARD, of Counsel
                      23 Green Street
                      Suite 303
                      Huntington, New York  11743

                      GROSS SHUMAN P.C.
                      Attorneys for Defendants
                      HUGH C. CARLIN, and
                      KATHERINE M. LIEBNER, of Counsel
                      465 Main Street
                      Suite 600
                      Buffalo, New York  14203


**JURISDICTION**

On May 10, 2018, this case was referred to the undersigned by Honorable

Richard J. Arcara for preparation of a report and recommendation on dispositive

motions.  The matter is presently before the court on motions filed by Plaintiff on

December 4, 2015, for summary judgment (Dkt. 42), and by Defendants on December

7, 2015, for partial summary judgment (Dkt. 43).

# BACKGROUND

Plaintiff Sandra Meidenbauer ("Plaintiff"), commenced this labor action on August 2, 2013, alleging Defendants Zenith Acquisition Corp. ("Zenith"), Mercantile Adjustment Bureau LLC ("Mercantile"),[1] David Paris ("Paris"), and Howard Hornblass ("Hornblass") (together, "Defendants"), failed to pay Plaintiff overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1), Complaint ¶¶ 32-37 ("First Claim" or "FLSA Claim"), and New York Labor Law ("NYLL") §§ 190 *et seq.*, §§ 650 *et seq.*, and 12 New York Code Rules and Regulations ("NYCRR") § 137-1.3 and § 142-2.2 (collectively, "New York Labor Law" or "NYLL"), Complaint ¶¶ 38-42 ("Second Claim" or "NYLL Claim").  Defendants' answer, filed October 1, 2013 (Dkt. 6) ("Answer"), raises seven affirmative defenses.

On December 4, 2015, Plaintiff filed a motion for summary judgment (Dkt. 42) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment (Dkt. 42-1) ("Plaintiff's Memorandum"), Plaintiff's Statement of Material Facts Not in Dispute (Dkt. 42-2) ("Plaintiff's Statement of Facts"), Plaintiff's Appendix to Statement of Material Facts Not in Dispute (Dkt. 42-3) ("Plaintiff's Appendix"), and exhibits A through K (Dkts. 42-4 through 42-14) ("Plaintiff's Exh(s). __").  On December 7, 2015, Defendants filed a motion for partial summary judgment (Dkt. 43) ("Defendants' Motion"), the Declaration of Katherine M. Liebner, Esq. (Dkt. 44) ("Liebner Declaration"), attaching exhibits 1 through 3 (Dkts. 44-1 through 44-3) ("Defendants' Exh(s). __"), the Memorandum of Law in Support of the Motion of Defendants, Zenith Acquisition Corp., David Paris and Howard Hornblass for Partial

---

[1] Per a Stipulation of Discontinuance filed by Plaintiff on November 27, 2013 (Dkt. 10), Mercantile was terminated as a Defendant on December 2, 2013.

Summary Judgment (Dkt. 45) ("Defendants' Memorandum"), Defendants' Local Rule 56(A)(1) Statement of Undisputed Facts (Dkt. 46) ("Defendants' Statement of Facts"), and a Notice of Bankruptcy Filing for Hornblass (Dkt. 47) ("Bankruptcy Notice").

On February 1, 2016, Defendants filed Defendants' Local Rule 56(a)(2) Statement in Response to Plaintiff's Local Rule 56(a)(1) Statement (Dkt. 50) ("Defendants' Responding Statement of Facts"), the Declaration of Katherine M. Liebner, Esq. (Dkt. 51) ("Liebner Response Declaration"), attaching exhibits A through H (Dkts. 51-1 through 51-8) ("Defendants' Response Exh(s). __"), and Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment (Dkt. 52) ("Defendants' Response").  On February 15, 2016, Plaintiff filed the Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment (Dkt. 54) ("Plaintiff's Reply").

On March 1, 2016, Plaintiff filed Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Partial Summary Judgment (Dkt. 56) ("Plaintiff's Response"), attaching the Affidavit of Steven Bennett Blau, Esq. (Dkt. 56-1) ("Blau Affidavit"), exhibits A through B (Dkts. 56-2 through 56-4) ("Plaintiff's Response Exh(s). __"), and Plaintiff's Local Rule 56(a)(1) Statement of Undisputed Facts (Dkt. 56-5) ("Plaintiff's Second Statement of Facts").  On March 3, 2016, Plaintiff filed Plaintiff's Local Rule 56(a)(1) Response to Defendants' Statement of Undisputed Material Facts Requiring Denial of Defendants' Motion for Summary Judgment (Dkt. 57) ("Plaintiff's Responding Statement of Facts").  On March 35, 2016, Defendants filed the Reply Memorandum of Law in Further Support of the Motion of Defendants Zenith Acquisition Corp., David Paris and Howard Hornblass for Partial Summary Judgment (Dkt. 60) ("Defendants' Reply").  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion should be DENIED in part and GRANTED in part; Defendants' Motion should be DENIED.  The case should be scheduled for trial.

## **FACTS[2]**

On March 27, 2006, Plaintiff Sandra Meidenbauer ("Plainitff" or "Meidenbauer"), commenced employment as a bookkeeper with Defendant Zenith Acquisition Corp. ("Zenith"), a contingency debt collection agency which at its peak had 100 employees handling 400,000 accounts for clients involving more than $ 720 million in unpaid debt. Defendants David Paris ("Paris"), and Howard Hornblass ("Hornblass"), are Zenith's owners, sole shareholders, and principals with Paris as Zenith's Chief Executive Officer ("CEO") and President, Paris Dep. Tr.[3] at 28, and Hornblass as Zenith's Chief Financial Officer ("CFO") and Vice President, Hornblass Dep. Tr. [4] at 18.  Throughout her employment with Zenith, Plaintiff directly reported either to Hornblass or to Director of Accounting Karen LaBelle ("LaBelle" or "Plaintiff's supervisor"), who, with Plaintiff, comprised Zenith's accounting department.  Plaintiff does not have a college degree, but in 1978 completed at Kelly Business Institute a 10-month accelerated course of education in business administration equivalent to a two-year degree, as well as a single accounting course at Niagara County Community College ("NCCC").  Plaintiff describes her job at Zenith as consisting of entering data Plaintiff received from her

---

[2] Taken from the pleadings and motion papers filed in this action.
[3] References to "Paris Dep. Tr." are to the page of the transcript of Paris's February 11, 2015 deposition, portions of which are filed as Plaintiff's Exh. E (Dkt. 42-8), Defendants' Exh. B (Dkt. 44-2), and Defendants' Response Exh. H (Dkt. 51-8).
[4] References to "Hornblass Dep. Tr." are to the pages of the transcript of the October 9, 2014 deposition of Hornblass, portions of which are filed as Plaintiff's Exh. D (Dkt. 42-7), Defendants' Exh. C (Dkt. 44-3), and Defendants' Response Exh. B (Dkt. 51-2).

superiors into speadsheets created by Plaintiff's supervisor or by managers in other departments.  Plaintiff never spoke with Zenith's clients or outside attorneys, had no authority and did not create checks from Zenith's QuickBooks accounts, process checks, or make deposits or debits into Zenith's accounts.  Nor did Plaintiff perform any managerial functions such as supervising employees or routinely attending management meetings.  Plaintiff also did not receive a car allowance.

Upon being hired at Zenith in March 2006, Plaintiff's schedule was set at 8:30 A.M. to 4:30 P.M., Monday through Friday, or 40 hours per week, and Plaintiff was to be paid an annual salary based on a 40-hour work week.  As part of her job, Plaintiff had to pull reports regarding collection activity and status from the computer system on a daily basis.  Because this task slowed the computer system, shortly after commencing employment with Zenith, Plaintiff was informed she had to report to work at 7:00 A.M. each day so that Plaintiff could pull the reports before the debt collectors began their shifts at 8:00 A.M.  Plaintiff's request for an earlier departure time to compensate for the earlier start time was denied and Plaintiff often worked past 4:30 P.M.  As a result, Plaintiff worked 48 to 50 hours a week, but never received overtime pay.

Upon being hired by Zenith, Plaintiff was classified as an exempt salaried employee based on the recommendation of Paychex, Inc. ("Paychex"), Zenith's payroll processing and human resources provider, and signed a Notice for Exempt Employees form indicating Plaintiff understood she was exempt from overtime pay.  Plaintiff was not required to punch a time clock nor to keep written records as to her hours worked, took several breaks a day and received a daily lunch break, vacation time and sick days. Plaintiff's initial job title was "bookkeeping," which was later changed to "accounting

assistant" and then to "legal accounting."  Plaintiff received annual pay increases, and

her initial salary of $ 37,800 increased over the six years Plaintiff worked for Zenith to

$ 46,750.

Plaintiff remained in Zenith's accounting department throughout her employment,

working with Hornblass and LaBelle, her direct supervisor and Zenith's Accounting

Director.  When some personality conflict interfered with Plaintiff's working relationship

with LaBelle, Plaintiff for a few months directly reported to Hornblass, but Plaintiff and

LaBelle were able to work out their issues and Plaintiff resumed directly reporting to

LaBelle.  Although Plaintiff interacted with Hornblass on a daily basis with Hornblass

providing Plaintiff with the daily banking transactions for entry into Zenith's computer

records, Plaintiff's interaction with Paris was "very minimal."  Plaintiff's Dep. Tr. [5] at 107.

Plaintiff's initial title of "bookkeeper" was later changed to "accounting assistant," and

then to "legal accounting" when Plaintiff began inputting data onto spreadsheets used in

connection with Zenith's accounting for transactions involving outside legal counsel.

Plaintiff largely worked alone in her own office and aside from the daily hours she was

scheduled to work, Plaintiff had discretion over her work schedule including when she

took lunch, whether she took or worked through lunch, and what breaks Plaintiff took,

and Plaintiff also enjoyed several weeks of vacation each year.  During her employment

at Zenith, Plaintiff on one occasion traveled with Hornblass to Atlanta, Georgia, to

investigate whether a particular law firm was properly dispensing funds Zenith had

provided to cover court costs.  Plaintiff estimated that during one particular two-month

---

[5] References to "Plaintiff's Dep. Tr." are to pages of the transcript of Plaintiff's October 8, 2014 deposition, portions of which are filed as Plaintiff's Exh. C (Dkt. 42-6), as Defendants' Exh. A (Dkt. 51-1), and as Plaintiff's Response Exh. A (Dkt. 56-2).

period while performing legal accounting, she found court cost errors that saved Zenith $ 40,000.

In 2012, Zenith sold its assets and ceased operations, resulting in the termination of Plaintiff's employment for which Plaintiff received her final paycheck on May 25, 2012.  Plaintiff's concerns regarding Zenith's classification of her position as salaried, rather than hourly, first arose when Plaintiff was presented with a job offer for a similar bookkeeper/accounting assistant position with another company after leaving Zenith's employ.  Plaintiff's Dep. Tr. at 119.

## DISCUSSION

### 1.    Summary Judgment

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003).  The court is required to construe the evidence in the light most favorable to the non-moving party.  *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322; *see Anderson*, 477 U.S. at 247-48 ("summary judgment will not lie if the dispute about a

material fact is "genuine," that is, if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party").

"[T]he evidentiary burdens that the respective parties will bear at trial guide

district courts in their determination of summary judgment motions." *Brady v. Town of

Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)).  A defendant is entitled to summary

judgment where "'the plaintiff has failed to come forth with evidence sufficient to permit

a reasonable juror to return a verdict in his or her favor on'" an essential element of a

claim on which the plaintiff bears the burden of proof.  *In re Omnicom Group, Inc., Sec.

Litig.*, 597 F.3d 501, 509 (2d Cir. 2010) (quoting *Burke v. Jacoby*, 981 F.2d 1372, 1379

(2d Cir. 1992)).  Conversely, a plaintiff is entitled to summary judgment on the issue of

liability if the plaintiff establishes each of the elements of a claim on undisputed facts,

and the defendant is unable to establish by a preponderance of the evidence the

existence of any affirmative defense, even if genuine issues of fact remain as to

appropriate damages.  *See United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 720

(2d Cir. 1993) (where moving plaintiff establishes each element of its claim on

undisputed facts and defendant cannot establish the existence of any affirmative

defense, summary judgment is appropriate even though questions of fact may remain

as to the appropriate damages to be awarded the plaintiff).  Once a party moving for

summary judgment has made a properly supported showing of the absence of any

genuine issue as to all material facts, the nonmoving party must, to defeat summary

judgment, come forward with evidence that would be sufficient to support a jury verdict

in its favor.  *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d

Cir. 1995).  "An issue of fact is genuine and material if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Cross Commerce Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 162 (2d Cir. 2016) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133,137 (2d Cir. 2009)). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996).

In the instant case, Plaintiff essentially argues that throughout her tenure at Zenith, she was misclassified as a salaried, rather than hourly, employee, and thus improperly exempted by Defendants from federal and state laws requiring overtime pay for hours worked in excess of 40 hours per week.  Defendants maintain that, at the very least, issues of fact exist as to whether Plaintiff's employment was within the administrative employee exemption, precluding summary judgment in favor of Plaintiff, the record establishes summary judgment should be granted as to Paris who was not Plaintiff's employer, and the action is automatically stayed by bankruptcy as against Hornblass.[6]

## 2.    Applicable Law

In 1938, the Fair Labor Standards Act ("FLSA") was enacted to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers," 29 U.S.C. § 202(a), including provisions ensuring adequate compensation for workers.  29 U.S.C. § 206 (minimum wage) and § 207 (maximum hours).   As relevant here, for any workweek exceeding 40 hours, an employee must be compensated "at a rate not less than one and one-half

---

[6] The record is devoid of any evidence that the automatic stay based on Hornblass's bankruptcy filing has been lifted.

times the regular rate at which he is employed."  29 U.S.C. § 207(a) ("§ 207(a)" or

"overtime provision"); *Encino Motorcars, LLC v. Navarro*, __ U.S. __; 138 S.Ct. 1134,

1138 (2018) ("Enacted in 1938, the FLSA requires employers to pay overtime to

covered employees who work more than 40 hours in a week.").  There are, however,

several types of employees who are exempt from the overtime provision, including, as

relevant here, "administrative employees."  29 U.S.C. § 213(a)(1); *Navarro*, 138 S.Ct. at

1138.  Pertinent parts of New York Labor Law and corresponding regulations

(collectively, "New York Labor Law" or "NYLL"), similarly mandate overtime pay with the

same exemptions as the FLSA.  *See* N.Y. Codes Comp. R. & Regs., tit. 12 § 142-3.2

("an employer shall pay employees for overtime at a wage rate of one and one-half

times the employee's regular rate in the manner and methods provided in and subject to

the exemptions of [ ] the Fair Labor and Standards Act of 1938 . . . provided the

exemptions set forth [therein] shall not apply.").  Nevertheless, where, as here, a plaintiff

seeks recovery of unpaid wages for the same hours under both federal and state wage

laws (together, "federal and state labor laws"), the plaintiff is limited to recovering only

under the statute providing the greatest amount of damages.  *Jiao v. Chen*, 2007 WL

4944767, at * 17 (S.D.N.Y. Mar. 30, 2007) (citing *Ellerbe v. Howard*, 1989 WL 64156, at

*4 n. 3 (W.D.N.Y. June 13, 1989) (noting recovery for unpaid wages for same hours

under both FLSA and New York Labor Law would be duplicative).

When a plaintiff prevails on an FLSA overtime wages claim, the employee may

recover double damages.  29 U.S.C. § 216(b) (providing the employer found in violation

of 29 U.S.C. § 206 or § 207, "shall be liable to the employee or employees affected in

the amount of . . . their unpaid overtime compensation, . . . and in an additional equal

amount as liquidated damages."). *See Barfield v. New York City Health and Hospitals, Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) ("Under the FLSA, a district court is generally required to award a plaintiff liquidated damages equal in amount to actual damages." (citing 29 U.S.C. § 216(b)).  Such "'[l]iquidated damages are not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA.'" *United States v. Sabhnani*, 599 F.3d 215, 260 (2d Cir. 2010) (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999); and citing, *inter alia*, *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 583-84 (1942) (considering liquidated damages to be "intended as compensation, rather than as a penalty or punishment, in recognition that "[t]he retention of a workman's pay may well result in damages too obscure and difficult of proof for estimate other than by liquidated damages.")).  The FLSA was amended by the Portal-to-Portal Act of 1947, 29 U.S.C. § 251 *et seq.*, to afford "district courts discretion to deny liquidated damages where the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA." *Barfield*, 537 F.3d at 150 (quoting 29 U.S.C. § 260).  Double damages, however, are "the norm and single damages the exception," with the employer's burden to avoid double damages "'a difficult one.'" *Id.* (quoting *Herman*, 172 F.3d at 142 (2d Cir. 1999), and citing *Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997)).

Here, the parties dispute whether Plaintiff was improperly classified as an exempt employee under the FLSA's administrative employee exemption, as well as whether Paris qualifies as an employer liable for any damages.

A.     **FLSA's Overtime Exemptions**

In support of summary judgment, Plaintiff argues Defendants are unable to meet its burden of proving Plaintiff's work, which she characterizes as data input requiring no particular education or work experience, qualifies for the FLSA's executive or professional capacity exemptions.  Plaintiff's Memorandum at 12-16.  In opposing summary judgment, Defendants do not dispute that Plaintiff's position was not exempted from overtime pay under the FLSA's executive or professional exemptions, but argue it was exempt under the administrative employee exemption which Plaintiff fails to address, as is her burden.  Defendants' Response at 13-22.  In further support of summary judgment, Plaintiff maintains that the onus is on Defendants to demonstrate an employee's job is within an FLSA overtime pay exemption, and such exemptions are to be narrowly construed.  Plaintiff's Reply at 2-9 (citing cases).

Preliminarily, the court observes that Defendants do not dispute Plaintiff's assertion, Plaintiff's Memorandum at 12-16, that her employment at Zenith was not exempt from the overtime wage laws under either the executive or professional capacity exemptions, *i.e.*, 29 C.F.R. Pt. 541 SubPt. B (Executive Employees), and 29 C.F.R. Pt. 541 Subpt. D (Professional Employees); rather, Defendants maintain Plaintiff's job constituted administrative employment which is exempt from the overtime wage provisions under 29 C.F.R. Pt. 541 Subpt. C.  Defendants' Response at 13-23.  Tellingly, Plaintiff's argument in further support of summary judgment, Plaintiff's Reply at 3-9, addresses only the administrative exemption, but neither the executive nor professional exemption, signaling Plaintiff's concession that that only exemption that could apply to her job at Zenith is the administrative exemption.  Accordingly, the court

12

considers whether Plaintiff's job was exempt from overtime wage laws only under the FLSA's administrative exemption.

The court further observes that recently, the Supreme Court clarified that the "narrow construction" courts often give FLSA overtime exemptions is not supported by the statute's plain text; rather, "[b]ecause the FLSA gives no 'textual indication' that its exemptions should be narrowly construed, 'there is no reason to give [them] anything other than a fair (rather than a 'narrow') interpretation." *Navarro*, 138 S.Ct. at 1142 (quoting A. Scalia & B. Garner, Reading Law at 363 (2012) (bracketed material in original)[7] and rejecting that the FLSA's numerous exemptions are anything other than "as much a part of the FLSA's purpose as the overtime pay requirement.")). "The narrow-construction principle relies on the flawed premise that the FLSA pursues its remedial purpose at all costs." *Id.* (citations and internal quotation marks omitted). Indeed, the FLSA's "exemptions are as much a part of the FLSA's purpose as the overtime-pay requirement." *Id.* Having determined the FLSA's overtime pay exemptions, including for administrative employees as relevant here, are not to be narrowly construed, the court turns to whether Plaintiff's employment at Zenith qualified as exempt.

Issued pursuant to statutory authority, the Department of Labor's regulations defining the terms of the FLSA's administrative employee exemption "'have the force of law, and are to be given controlling weight unless they are found to be arbitrary, capricious, or manifestly contrary to the statute.'" *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 559 (2d Cir. 2012) (quoting *Freeman v. Nat'l Broadcasting Co.*, 80

---

[7] Unless otherwise indicated, all bracketed material has been added.

F.3d 78, 82 (2d Cir. 1996), and citing Dep't of Labor, Wage & Hour Div., *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees*, 69 Fed.Reg. 22,122, 22,124 (Apr. 23, 2004) ("Because the FLSA delegates to the Secretary of Labor the power to define and delimit the specific terms of these exemptions through notice-and-comment rulemaking, the regulations so issued have the binding effect of law.")).  As relevant, the Secretary of Labor defines "an employee employed in a bona fide administrative capacity" as an employee (1) who is compensated at no less than $ 455 per week, (2) whose "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," and (3) whose "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(1).  An employee's work bears on her employer's "general business operations" if "the employee "perform[s] work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment."  29 C.F.R. § 541.201(a).  Included on a non-exhaustive list of work considered exempt under the FLSA administrative exemption is ""[w]ork directly related to management or general business operations [such as] work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations; government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities."  29 C.F.R. § 541.201(b).

Further, "[t]o qualify for the administrative exemption, an employee's primary duty must include the exercise of discretion and independent judgment with respect to matters of significance," and generally "involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered."  29 C.F.R. § 541.202(a).  "The term 'matters of significance' refers to the level of importance or consequence of the work performed." *Id.*  "The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision, [yet] employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level," such that "[t]he fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment.  29 C.F.R. § 541.202(c).  "The phrase 'discretion and independent judgment' must be applied in the light of all the facts involved in the particular employment situation in which the question arises."  29 C.F.R. § 541.202(b) (setting forth non-exhaustive list of factors to be considered).

To qualify under any one of the FSLA's overtime exemptions, "an employee's 'primary duty' must be the performance of exempt work."  Significantly, "employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement."  29 C.F.R. § 541.700(b).  Nevertheless, although "[t]he amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee," "[t]ime alone [ ] is not the sole test," such that "[e]mployees who do not spend more than 50 percent of their time

performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." 29 C.F.R. § 541.700(b).  In the instant case, the record contains evidence suggesting Plaintiff's accounting assistant position included both clerical work and work exempted under the FLSA as administrative. Whether Plaintiff is entitled to summary judgment thus depends on whether Plaintiff's job duties were primarily data entry and bookkeeping, as Plaintiff asserts, or whether her job was more administrative, as Defendants maintain, and the evidence submitted in support of these contrasting positions establishes a genuine issue of material fact precluding summary judgment.

In particular, in asserting her job did not qualify for any overtime wage exemption, Plaintiff claims Zenith controlled her work schedule and conditions of employment including her rate of pay, job duties, and assignments.  Complaint ¶¶ 20-21.  Plaintiff worked exclusively in Zenith's accounting department, directly reporting to LaBelle, the only other accounting department employee, and Hornblass, one of Zenith's two corporate principals and Zenith's CFO.  Plaintiff's Declaration ¶ 5; Plaintiff's Dep. Tr. at 72, 86, and 105.  Plaintiff does not have a college degree, was not an accountant and did not perform any actual accounting tasks but characterizes her job as "nothing more than a data entry/accounting clerk," entailing entering data provided by her superiors into spreadsheets created by Plaintiff's supervisor or managers in other departments. Plaintiff's Declaration[8] ¶¶ 2, 5, 6-7, 9; Plaintiff's Dep. Tr. at 56-57.  Plaintiff maintains she performed no managerial functions, did not supervise any employees or regularly attend meetings, was not provided with a car allowance, never spoke with Defendants'

---

[8] Plaintiff's Exh. B (Dkt. 42-5).

clients or outside counsel, did not create checks from Zenith's QuickBooks accounts, and had no authority to process checks or to make deposits or debits. Plaintiff's Declaration ¶¶ 7-9; Plaintiff's Dep. Tr. at 55, 99-100; Hornblass Dep. Tr. at 91-93, 124-25, 139-40. Plaintiff describes her regular work duties as pulling information uploaded by the remittance department from the computer server, and sorting the data by specific codes to ensure the monies were remitted to the proper accounts. Plaintiffs' Dep. Tr. at 52-55; 82-84. Because Plaintiff had no authority to edit any data entries, she directed questions regarding certain data entries to the remittance department. *Id.* at 88. Although LaBelle assigned Plaintiff to verify data Plaintiff entered into the speadsheets coincided with other data reports from the collectors, if the data did not match the other reports, Plaintiff was not authorized to fix the errors, but was required to advise LaBelle or Hornblass of the errors. *Id.* at 94-95.

Eventually, Plaintiff was responsible for accounting services for Zenith's legal department, where Plaintiff's job duties included accounting for payments to contract attorneys that submitted bills and expense reports to Zenith for reimbursement on monies collected. Plaintiff's Dep. Tr. at 97-98. Plaintiff entered data provided by the contracting attorneys into pre-designed spread sheets which then automatically calculated how much money was owed to each outside counsel. *Id.* at 56, 91-92. Plaintiff also compared invoices submitted by contracting counsel with an attorney fee list and reported any inconsistencies between the invoices and the listed fees to Hornblass and Mercurio-Witt,[9] *id.* at 99, 148, because Plaintiff was not permitted to contact any contract attorney to resolve billing issues. Plaintiff's Dep. Tr. ¶ 7.

---

[9] References to "Mercurio-Witt" are to Zenith's legal director Ann Marie Mercurio. Plaintiff's Dep. Tr. at 142.

Plaintiff maintains that regardless of whether she was working with Zenith's accounting department or legal department, Plaintiff's job essentially was limited to inputting data on spreadsheets designed by others and then reviewing the data and reporting any inconsistencies or errors to management.  Hornblass concurs that Plaintiff did not deal with employee complaints, Hornblass Dep. Tr. at 125, and that Plaintiff was not involved with any human resources or personnel issues including wages, benefits, vacation, payroll, unemployment, nor was Plaintiff authorized to address whether legal issues were to be handled by in-house or outside counsel, was not involved in selecting outside counsel, and had no discretion or control over Zenith's operations.  Neither Hornblass nor Paris considered Plaintiff  a member of Zenith's management, Hornblass Dep. Tr. at 24-25; Paris Dep. Tr. at 139-40, and Plaintiff only occasionally was included in meetings when the "magnitude or the topic" for discussion exceeded management. Hornblass Dep. Tr. at 30.

Although when questioned whether she left early on Fridays, a regular occurrence at Zenith, Plaintiff admitted she sometimes left early on Fridays, but that there were more Fridays she did not leave work early.  Plaintiff's Dep. Tr. at 123-24. Plaintiff's claim that she regularly worked 48 to 50 hours per week is based on the fact that Plaintiff regularly arrived for work before 7:00 A.M., and was required to work each day until 4:30 P.M., but often stayed till 5:00 P.M., yielding an average work week of 50 hours.  According to Plaintiff even allowing for a daily ½ hour unpaid lunch break and occasionally leaving early on Fridays would not negate that Plaintiff consistently worked more than 45 hours a week without ever receiving any overtime pay.  Significantly, the discussion regarding whether Plaintiff left work early on Fridays is phrased as though

Plaintiff needed permission to do so, Plaintiff's Dep. Tr. at 123-24, ("But do you recall *being allowed to leave early* on Friday?"),[10] strongly implying Plaintiff needed permission to leave prior to the 4:30 P.M. end time established when Plaintiff commenced working for Zenith.

Despite evidence that Plaintiff's accounting assistant position consisted largely of date entry and bookkeeping tasks, there is evidence in the record that at least the position, in part, may have qualified for the administrative employee exemption as Defendants maintain because Plaintiff had some degree of autonomy in performing her job and also exercised discretion and independent judgment with respect to matters of significance.  For example, except for requiring Plaintiff to be at work by a certain time, and to stay till 4:30 P.M., Plaintiff set her own workday schedule, including prioritizing the tasks for any specific day and determining when to take her breaks and lunch.  Plaintiff Dep. Tr. at 81-82.  In addition to data entry, Plaintiff's job tasks included analyzing data and audits, reconciling reports and accounts, analyzing percentages and discrepancies between "return costs"[11] and determining which data to include in reports which required discretion and independent judgment.  Hornblass Dep. Tr. at 91, 105-12. Hornblass explained that Plaintiff "had a lot of influence on what was transpiring out of the legal area when it came to attorney's fees, cost disbursements."  *Id.* at 109. Hornblass maintains Plaintiff and LaBelle worked together formulating spreadsheets, but Hornblass would not say that LaBelle made the final decisions on the spreadsheets, asserting "[t]hey both had big sets of jobs to do and it came into doing a lot of analyzing

---

[10] Unless otherwise indicated, italics are added.
[11] Hornblass defines "return costs" as an analysis between percentages and discrepancies.  Hornblass Dep. Tr. at 106.

and a lot of auditing because we needed to make sure everything was correct when we

sent all this information off to [our business lender]." *Id.* at 110.  Hornblass further

described the working relationship between Plaintiff and LaBelle as "a good team

concept." *Id.* at 112.  Plaintiff was required to meet monthly with Varde Partners[12] for

an audit of Zenith's legal work. *Id.* at 115.  According to Hornblass, because of the

large amount of money held in Zenith's legal department accounts, *i.e.*, $ 720 million

dollars maintained in more than 400,000 accounts, Plaintiff's legal accounting

responsibilities exceeded merely reviewing spreadsheets; rather, Plaintiff was required

to analyze all the data and entries to ascertain that the retained attorneys were not

seeking payment and reimbursement for work that was not performed or for legal

assistance in recouping payments that were not actually collected from the various

accounts. *Id.* at 116-17.  Hornblass also recalled Plaintiff worked with Zenith's outside

accountants. *Id.* at 117-19.  Hornblass disputed Plaintiff regularly worked 48 hours a

week, estimating Plaintiff generally worked from 8:00 A.M. to 5:00 P.M., and was often

allowed to leave early on Fridays, *id.* at 131-32, but was not required to "punch a clock,"

and had "flexibility" with discretion as to when she started and ended work each day. *Id.*

at 135.

　　　　Plaintiff's job duties in her various roles with Zenith, as described by Plaintiff and

Defendants, show genuine questions of material fact as to whether Plaintiff exercised

discretion and independent judgment with respect to matters of significance, including

comparing and evaluating possible courses of conduct with respect to debt collection

accounting, or making the final decision on action to be taken after considering the

---

[12] Varde Partners is a hedge fund that in 2003 provided Zenith with a line of credit used to purchase consumer receivables.  Paris Dep. Tr. at 35.

various possible actions available, so as to be considered an administrative employee. 29 C.F.R. § 541.202(a) (providing work qualifies for the administrative exemption where the employee's primary duties include exercising discretion and independent judgment involving the comparison and evaluation of possible courses of conduct prior to making decisions with respect to matters of significance).  It is also possible that part of Plaintiff's job entailed only data entry work, with Plaintiff also responsible for some work qualifying as administrative employment such that there exists a genuine issue of material fact as to whether Plaintiff's employment at Zenith was properly categorized as primarily administrative.  29 C.F.R. § 541.700(b) (providing although the amount of time spent performing exempt work is a useful guide in determining whether exempt work is the employee's primary duty, time alone is not the sole test and employees who perform less than 50% of their time on exempt work duties may still meet the primary duties requirement if other factors support such conclusion).  As there is evidence supporting both Plaintiff's claim that she performed data entry work of the type generally performed by a non-administrative employee and for which Plaintiff should have been entitled to overtime wages under federal and state labor laws, as well as evidence supporting Defendants' assertion that Plaintiff essentially was an administrative employee exempt from overtime wages under both federal and state labor laws, there is a genuine issue of fact as to whether Plaintiff was properly classified as an exempt employee under the administrative employee exemption.  Because this matter requires trial, Plaintiff's Motion should be DENIED.

    **B.**    **Employer**

Defendants move for summary judgment on the "narrow and discrete" issue of whether Paris constituted an employer as defined under the relevant federal and state labor laws. [13]  Defendants' Memorandum at 2.  According to Defendants, the evidence in the record fails to demonstrate Paris had the requisite operational control over Zenith's daily activities and Plaintiff's terms of employment so as to be considered an employer under the FLSA and New York labor laws.  *Id.*  In opposition, Plaintiff argues Paris exercised a significant amount of control over Zenith's operations and finances precluding summary judgment exonerating Paris of all liability on Plaintiff's claims. Plaintiff's Response at 2.  In further support of partial summary judgment, Defendants maintain they have "unequivocally demonstrated" Paris's role with Zenith establishes Paris was not an "employer" as defined under applicable federal and state labor laws such that Paris is entitled to summary judgment in this action.  Defendants' Reply at 1.

For liability under the FLSA, a defendant must be an "employer," broadly defined under § 3(d) as "any person acting directly or indirectly in the interest of an employer in relation to an employee. . . ."  29 U.S.C. § 203(d).  The Supreme Court has consistently construed the FLSA "'liberally to apply to the furthest reaches consistent with

---

[13] Although Defendants' Fifth Affirmative Defense asserts neither Paris nor Hornblass was Plaintiff's "employer" as defined under the FLSA and New York Labor Law, Answer ¶ 47, Defendants' Motion for partial summary judgment presents no argument as to whether Hornblass's position at Zenith constituted such an "employer" because the action is automatically stayed as against Hornblass based on Hornblass's filing for Chapter 7 bankruptcy.  11 U.S.C. § 362(a)(1) (providing, *inter alia*, the filing of bankruptcy under 11 U.S.C. § 301 ("Chapter 7") "operates as a stay, applicable to all entities, of the commencement or continuation . . . of a judicial . . . action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy proceeding] . . . .").  The significance of whether Paris qualifies as an employer under the FLSA goes to whether Plaintiff could recover any damages from Paris, which is made more relevant with Hornblass's recent bankruptcy filing signaling a lack of funds with which to pay any judgment in favor of Plaintiff on her instant claims. Defendants do not, however, address the effect of the eventual lifting of the automatic bankruptcy stay, whether by the completion of the bankruptcy action or otherwise, on the instant action as against Hornblass.

congressional direction.'" *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013)

(quoting *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985)),

*cert. denied*, __ U.S. __; 134 S.Ct. 1516 (2014).  Although nowhere within the FLSA is

"employer" defined, "'[t]he common law agency test was found too restrictive to

encompass the broader definition of the employment relationship contained in the

FLSA." *Id.* (quoting *Frankel v. Bally, Inc.*, 987 F.2d 86, 89 (2d Cir. 1993)).  "Instead, the

statute 'defines the verb 'employ' expansively to mean 'suffer or permit to work.'"" *Id.*

(quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (quoting 29

U.S.C. § 203(g))).  The FLSA's definition of "employer," however, "relies on the very

word it seeks to define: "'Employer' includes any person acting directly or indirectly in

the interest of an employer in relation to an employee.'" *Id.* (quoting 29 U.S.C. §

203(d)).  Whether a defendant is an employer under the FLSA is a mixed question of

law and fact, with individual employer liability rarely suitable for determination on

summary judgment.  *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F.Supp.2d 372,

393 (E.D.N.Y. 2012) (citing cases).

Insofar as Plaintiff sues Zenith, Hornblass and Paris as joint employers,

Complaint ¶ 22, both federal regulations and Second Circuit "precedent recognize the

possibility of joint employment for purposes of determining FLSA responsibilities."

*Barfield*, 537 F.3d at 141 (citing 29 C.F.R. § 791.2(a) (providing "all joint employers are

responsible, both individually and jointly, for compliance with all the applicable

provisions of the act, including the overtime provisions. . . ."), and *Zheng v. Liberty*

*Apparel Co.*, 355 F.3d 61, 66 (2d Cir. 2003) ("The regulations promulgated under the

FLSA expressly recognize that a worker may be employed by more than one entity at

the same time." (citing 29 C.F.R. § 791.2))).  As relevant here, a corporate officer can

be an employer along with the corporation.  *See Irizarry*, 722 F.3d at 108-09 (discussing

what must be established to find a corporate officer or owner of a company was also the

plaintiff's employer); *Tracy v. NVR, Inc.*, 2009 WL 3153150, at * 4 (W.D.N.Y. Sept. 30,

2009) ("Generally, corporate officers and owners held to be employers under the FLSA

have had some direct contact with the plaintiff employee, such as personally

supervising the employee's work, including determining the employee's day-to-day work

schedule or tasks, signing the employee's paycheck, or directly hiring the employee.").

Early on, the Supreme Court recognized that "the FLSA contains 'no definition

that solves problems as to the limits of the employer-employee relationship under the

Act.'"  *Irizarry*, 722 F.3d at 103-04 (quoting *Rutherford Food Corp. v. McComb*, 331 U.S.

722, 728 (1947)).  "'[T]he 'striking breadth' of the FLSA's definition of 'employ' 'stretches

the meaning of 'employee' to cover some parties who might not qualify as such under a

strict application of traditional agency law principles' in order to effectuate the remedial

purposes of the act.'"  *Id.* (quoting *Barfield*, 537 F.3d at 141 (quoting *Darden*, 503 U.S.

at 326)).  "'Accordingly, the Court has instructed that the determination of whether an

employer-employee relationship exists for purposes of the FLSA should be grounded in

'economic reality rather than technical concepts.'"  *Id.* (quoting *Barfield*, 537 F.3d at 141

(quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961))).  "The

'economic reality' test applies equally to whether workers are employees and to whether

managers or owners are employers."  *Id.* (citing *Herman v. RSR Sec. Servs. Ltd.*, 172

F.3d 132, 139 (2d Cir. 1999).  The employment relationship determination "'does not

depend on such isolated factors' as where work is done or how compensation is divided

'but rather upon the circumstances of the whole activity.'" *Irizarry*, 722 F.3d at 104

(quoting *Rutherford*, 331 U.S. at 730).  The "economic reality" test of an employment

relationship is based on four factors including "'whether the alleged employer (1) had

the power to hire and fire the employees, (2) supervised and controlled employee work

schedules or conditions of employment, (3) determined the rate and method of

payment, and (4) maintained employment records.'" *Id.* (quoting *Barfield*, 537 F.3d at

142).  In the context of a plaintiff employed by a corporation, a corporation's individual

officers or directors may be "deemed employers under the FLSA where the individual

has overall operational control of the corporation, possesses an ownership interest in it,

controls significant functions of the business, or determines employees' salaries and

makes hiring decisions."  *Tracy*, 667 F.Supp.2d at 246 (citing *Jiao*, 2007 WL 4944767,

at * 10).  "Where the relationship between the putative employer and the plaintiff

employee is more attenuated and the size of the corporation larger, employer liability

may not be found."  *Tracy*, 2009 WL 3153150, at * 4.  "Evidence that an individual is an

owner or officer of a company, or otherwise makes corporate decisions that have

nothing to do with an employee's function, is insufficient to demonstrate 'employer'

status.  Instead, to be an 'employer,' an individual defendant must possess control over

a company's actual 'operations' in a manner that relates to a plaintiff's employment."

*Irizarry*, 722 F.3d at 109.  In short, there must be "some degree of individual

involvement in a company in a manner that affects employment-related factors such as

workplace conditions and operations, personnel, or compensation – even if this appears

to establish a higher threshold for individual liability than for corporate 'employer'

status."  *Irizarry*, 722 F.3d at 109.  Although this does not mean that the individual

'employer' must be responsible for managing plaintiff employees – or, indeed, that he or she must have directly come into contact with the plaintiffs, their workplaces, or their schedules – the relationship between the individual's operational function and the plaintiff's employment must be closer in degree than simple but-for causation." *Irizarry*., 722 F.3d at 110.  Here, in considering whether Paris is an employer under the FLSA, the court must consider whether there is evidence in the record "'showing his authority over management, supervision, and oversight of [Zenith's] affairs in general,'" as well as evidence of any other factors reflecting Paris's exercise of direct control over Zenith's employees.  *Id.* at 111.  The instant record establishes genuine issues of material fact as to whether Paris was Plaintiff's "employer" as defined under the FLSA.

In particular, Defendants maintain Paris was exclusively involved in business development, including negotiating the purchase and sale of debt portfolios, communicating with financial institutions and debt management firms to obtain the portfolios of consumer receivables Zenith purchased, ensuring regulatory compliance, state licensing and insurance related to debt purchasing, as well as maintaining policies and procedures for payment processing.  Paris Dep. Tr. at 34-35, 54, 58-59, 64, and 70.  Paris was not responsible for maintaining Zenith's employee key fob/time swipe system, *id.* at 49, nor involved with Zenith's space leases to accommodate its employees.  *Id.* at 51.  Zenith retained Paychex, an outside payroll entity, to prepare its payroll and provide other HR services, including classifying employment positions with Zenith as exempt or non-exempt.  Paris Dep. Tr. at 94; Hornblass Dep. Tr. at 19, 76, 127.  Paris initially denied ever seeing Zenith's payroll, Paris Deposition Tr. at 52, but later admitted that payroll would be included on Zenith's Profit and Loss statements which Paris reviewed.

*Id.* at 99.  Paris also admitted he was a signatory for Zenith's bank accounts.  Paris

Dep. Tr. at 71.[14]

According to Paris, responsibility for Zenith's day-to-day operations was handled

by a team that included, *inter alia*, Plaintiff, LaBelle, and Hornblass, but did not include

Paris.  Paris Dep. Tr. at 70-71.  Paris did not handle employee complaints, turning them

over to Hornblass, and did not have direct access to employee personnel files but

needed assistance from human resources to gain access to any personnel files, and

generally was unaware when an employee was absent from work unless a meeting with

the employee had been planned.  *Id.* at 73-75.  Paris further maintains that while

working for Zenith he was "on the road a lot" and "on the phone a lot."  *Id.* at 99.  As

such, the daily operations were handled by Hornblass and others and Paris "really was

disengaged on the day-to-day basis," *id.*, and was not much involved in delegating

control over Zenith's day-to-day operations because Paris did not believe most of the

operations were his to delegate.  *Id.* at 100.  Hornblass, but not Paris, handled Zenith's

401k plan, *id.* at 104, and was responsible for hiring and firing.  *Id.* at 107-08.  In

contrast, Hornblass maintains Paris attended most of Zenith's monthly manager

meetings, Hornblass Dep. Tr. at 24-25, and received monthly accounting reports,

including cash flow statements and vendor reports, *id.* at 119, which Paris and

Hornblass reviewed before forwarding the reports to Varde.  *Id.* at 122.

Whereas Plaintiff maintains Paris participated in interviewing Plaintiff for the

bookkeeping position with Zenith, Plaintiff's Dep. Tr. at 37, Paris maintains Hornblass

was responsible for all of Zenith's hiring, Paris Dep. Tr. at 72, yet Paris also admitted

---

[14] Paris does not deny being a signatory to Zenith's back account on which Plaintiff's paychecks were drawn.

that after LaBelle, Hornblass, and Ray Crane, and Zenith's accountant, interviewed

Plaintiff, Paris was asked whether he approved of hiring Plaintiff, *id.* at 107, an assertion

Paris does not deny.  Paris maintains his interactions with Plaintiff were minimal, mostly

just exchanging greetings when Paris encountered Plaintiff on a cigarette smoking

break, Paris Dep. Tr. at 108, and Plaintiff never directly reported to Paris whom Plaintiff

asserts was a supervisor at Zenith, *id.* at 132-34,  but Plaintiff maintains she directly

reported to Hornblass and Paris during the brief period of time that Plaintiff was not

getting along with LaBelle.  Plaintiff's Dep. Tr. at 105-07.

Even in the absence of evidence that Paris was responsible for characterizing

Plaintiff's job as exempt, such that Paris was not responsible for any resulting overtime

wage violations, and given the scant evidence that Paris directly managed or otherwise

interacted with Plaintiff, focusing instead on developing business by negotiating for the

acquisition of consumer debt portfolios for Zenith's debt collection practice, there is

evidence that Paris exercised overall control of Zenith to hold Paris personally liable

with respect to the economic reality test for determining who is an employer under

FLSA.  For example, in *Irizarry*, 722 F.3d at 111-17, the Second Circuit considered

whether the defendant, who was chairman, president and CEO of the corporation

engaged in operating the chain of supermarkets where the plaintiffs worked, and who

had little involvement in corporation's human resources, instead focusing on "big

picture"  "merchandising decisions" such as which soft drinks to push for marketing and

whether to maintain pharmacies in the various stores, could be considered an

"employer" under the FLSA.  *Irizarry*, 722 F.3d at 111-17.  The Second Circuit

determined that although the defendant did not exercise managerial control in stores on

the daily level of a manager, the defendant exercised influence on multiple occasions in several stores, including making suggestions regarding store displays when visiting stores to check on merchandizing, and attending stores' grand openings and re-openings, although more in a public relations capacity than managerial, maintained, but seldom exercised, the capacity to hire and fire employees and to make other human resources decisions the defendants, his electronic signature appeared on paychecks, and he controlled the company financially, thereby establishing the defendant was an employer under the FLSA.  *Id.*  Similarly, in the instant case, Paris was a signatory on Zenith's bank accounts and could have signed payroll if necessary, there is evidence that Paris was involved in Plaintiff's hiring, and Paris's own description of his regular job duties with Zenith being the acquiring of debt for Zenith to collect, a task that was crucial to Zenith's existence, could be construed as establishing Paris was an employer within the meaning of the FLSA.  *See Ansoumana v. Gristede's Operating Corp.*, 255 F.Supp.3d 184, 193 (S.D.N.Y. 2003) (finding individual defendants who were founders, owners and sole shareholders of closely-held corporations liable as employers because together they "personally over[saw] and operate[d] the companies and their agents [plaintiffs] on a daily basis.").  This conflicting evidence in the record as to whether Paris's individual involvement in Zenith was in a manner affecting "employment-related factors such as workplace conditions and operations, personnel, or compensation . . . ," *Irizarry*, 722 F.3d at 109, requires a factual determination, such that Defendants' Motion seeking summary judgment that Paris did not qualify as an "employer" under the FLSA should be DENIED.

Although the parties have proceeded as though the test for "employer" status is the same under the FLSA and NYLL,[15] the Second Circuit "recently noted that the FLSA and NYLL analyses may differ." *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F.Supp.2d 901, 922-23 (S.D.N.Y. 2013) (citing *Irizarry*, 722 F.3d at 117 (observing the New York Court of Appeals has never addressed whether the "'employer' status" test is the same under the FLSA and the NYLL)).   Significantly, this court has observed that "[t]he New York State law standard for determining whether a worker is an employee or an independent contractor under the NYLL is phrased differently than the FLSA inquiry which, although substantially similar to the FLSA, focuses more on the degree of control exercised by the purported employer, as opposed to the economic reality of the situation." *Buehlman v. Ide Pontiac, Inc.*, 2016 WL 6581757, at * 8 (W.D.N.Y. Nov. 7, 2015) (internal quotation marks and citations omitted), *leave to appeal denied by* 268 F.Supp.3d 437 (W.D.N.Y. 2017).   Because the parties have not provided any argument as to whether Paris was Plaintiff's employer, as defined under the NYLL, the court does not reach the issue on summary judgment.   *See Irizarry*, 722 F.3d at 117-18 (vacating grant of summary judgment in plaintiff's favor on NYLL claims and remanding to district court for further proceedings on whether defendant was plaintiff's employer under NYLL); *Buehlman*, 2016 WL 6581757, at * 8 (denying without prejudice defendants motion for summary judgment on issue whether individual defendant was plaintiff's employer under NYLL).   Accordingly, Defendants' Motion should also be DENIED without prejudice

---

[15] Defendants note, and Plaintiff does not challenge, that "[w]hile there may be slight differences between the definitions of 'employer' under the FLSA and the NYLL, courts have consistently held that the NYLL embodies the same standards for joint employment as the FLSA.  Defendants' Memorandum at 5 n. 4 (citing *Chen v. Street Beat Sportswear, Inc.*, 364 F.Supp.2d 269, 278 (E.D.N.Y. 2005)).

insofar as the issue of whether Paris was Plaintiff's employer under the NYLL has not been addressed by the parties and the court.

### C.    Affirmative Defenses

Plaintiff alternatively seeks to strike all seven affirmative defenses asserted by Defendants including (1) Plaintiff's claims are barred by the applicable statute of limitations, Answer ¶ 43 ("First Affirmative Defense"); (2) Plaintiff failed to mitigate damages, *id.* ¶ 44 ("Second Affirmative Defense"); (3) Plaintiff suffered no material loss, *id.* ¶ 45 ("Third Affirmative Defense"); (4) laches, waiver, estoppel or unclean hands precludes any recovery by Plaintiff, *id.* ¶ 46 ("Fourth Affirmative Defense"); (5) Neither Paris nor Hornblass qualifies under the FLSA as an employer, *id.* ¶ 47 ("Fifth Affirmative Defense"); (6) Defendants acted in good faith, *id.* ¶ 48 ("Sixth Affirmative Defense"), and (7) under both the FLSA and New York Labor Law, Plaintiff was a salaried employee exempt from overtime pay, *id.* ¶ 49 ("Seventh Affirmative Defense").  Plaintiff's Memorandum at 16-21.  The court addresses each of the seven affirmative defenses in turn.

### 1..    First Affirmative Defense

Defendant's First Affirmative Defense is that Plaintiff's claims are barred in whole or in part by the applicable statute of limitations.  Answer ¶ 43.  Plaintiff argues, Plaintiff's Memorandum at 16, and Defendants do not dispute, Defendants' Response at 22, that the FLSA provides a two-year limitations period for overtime wage claims, unless the violation is willful, which extends the limitations period to three years.  29 U.S.C. § 255(a).  Here, Plaintiff's argument that her complaint was filed "less than two years after Plaintiff's last paycheck was issued," Plaintiff's Memorandum at 17, strongly

suggests Plaintiff claims Defendants engaged in a non-willful violation of the relevant overtime laws.  Plaintiff maintains her FLSA claim accrued each time Defendants issued her an illegal paycheck.  Plaintiff's Memorandum at 16-17 (citing *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 641 (2d Cir. 2008)).  Defendants argue in opposition that courts have rejected the "continuing violation" doctrine with regard to FLSA actions, asserting Plaintiff's claim accrued when Plaintiff knew or had reason to know of the injury for which she seeks redress under the FLSA.  Defendants' Response at 22. Defendants further maintain New York Labor Law limits Plaintiff's overtime claim to six years from the commencement of the action, such that the filing of the instant action on August 2, 2013, limits Plaintiff's damages under New York Labor Law to August 2, 2007 through the last date of her employment with Zenith on May 9, 2012.  *Id.*  Plaintiff has not argued in further support of summary judgment on this defense.

Plaintiff's assertion that because her complaint was filed August 2, 2013, "significantly less than two years after Plaintiff's last paycheck was issued" and thus "well within the statute of limitations," not only strongly suggests Plaintiff is not claiming the asserted overtime pay violations were willful, along with Plaintiff's failure to argue in further support of summary judgment on Defendants' First Affirmative Defense, indicates Plaintiff does not claim a continuing violation, but concedes that she is limited under the FLSA to recovering damages from August 2, 2011, until May 25, 2012, the date of her final Zenith paycheck, and under New York Labor Law six-years limitation period, to August 2, 2007 through May 25, 2012.  Furthermore, because Plaintiff may not recover duplicate damages for the same hours under both federal and state wage laws, but only under whichever provides for the larger recovery, *Jiao*, 2007 WL

4944767, at * 17, Plaintiff's recovery would be under New York Labor Law for which the six-year limitations period, based on the Complaint's filing date of August 2, 2013, would permit Plaintiff to recover damages from August 2, 2007.  Accordingly, Plaintiff's Motion for summary judgment on Defendants' First Affirmative Defense should be DENIED.

### 2.    Second Affirmative Defense

Defendants' Second Affirmative Defense is that Plaintiff failed to mitigate damages.  *Id.* ¶ 44.  In support of summary judgment, Plaintiff argues the FLSA does not require mitigation of damages, Plaintiff's Memorandum at 17, and even if Plaintiff were required to mitigate damages, the fact that Plaintiff was unaware of the claimed violations until after her employment with Zenith ended establishes Plaintiff had no opportunity to mitigate her damages.  *Id.*  In opposing summary judgment, Defendants maintain there is at least an issue of fact precluding summary judgment as to whether Plaintiff failed to use reasonable efforts to mitigate damages because had Plaintiff promptly advised Zenith of her concern that Plaintiff was misclassified as a salaried employee, exempt as an administrative employee from overtime pay requirements, the issue could have been timely addressed.  Defendants' Response at 23.  Plaintiff has not argued in further support of summary judgment on Defendants' Second Affirmative Defense.

The sole case on which Defendants' rely in support of their argument that Plaintiff could have mitigated her damages by an earlier challenge to classification of her job as salaried, and thus exempt from overtime wages, Defendants' Response at 23 (citing *Donovan v. Casey Truck Sales, Inc.*, 1986 WL 9244, at * 5 (W.D.N.Y. Aug. 22, 1986), *aff'd sub nom. Brock v. Casey Truck Sales*, Inc., 839 F.2d 872 (2d Cir. 1988)), is

inapposite.  Significantly, at issue in *Donovan* was not a defendant employer's alleged improper classification of an employee as exempt resulting in a failure to pay overtime wages but, rather, an alleged retaliatory discharge of five employees who then failed to exercise due diligence in seeking new employment.  *Donovan*, 1986 WL 9244 at * 5.  In contrast, in the instant case, Plaintiff does not allege a retaliatory discharge from which she could have been expected to diligently seek new employment; rather, as explained at her deposition, Plaintiff's Dep. Tr. at 119, it was only in seeking new employment upon the cessation of her employment from Zenith that Plaintiff became aware of the asserted misclassification, such that Plaintiff was without any opportunity to mitigate damages.  *See Cava v. Tranquility Salon & Day Spa, Inc.*, 2014 WL 655372, at * 4 (E.D.N.Y. Feb. 20, 2014) (observing that where the plaintiff "seeks compensation for past legally required wages, [i]t is unclear how one could mitigate such damages and, just as contractual agreements for less than statutory requirements would contradict the purposes of the FLSA, mitigation of damages is likewise perverse."  Accordingly, under the circumstances present in the instant action, Plaintiff was not required to mitigate damages, and Plaintiff's Motion for summary judgment should be GRANTED as to the Second Affirmative Defense.

### 3.    Third Affirmative Defense

For their Third Affirmative Defendant, Defendants assert their alleged conduct caused Plaintiff no material loss.  Answer ¶ 45.  In support of summary judgment, Plaintiff argues that her material loss is the overtime wages Defendants failed to pay her throughout her employment at Zenith.  Plaintiff's Memorandum at 18.  In opposition to summary judgment, Defendants rely on their arguments in opposing summary judgment

on Plaintiff's FLSA and New York Labor Law claims regarding Plaintiff's classification as an administrative employee exempt from the subject overtime wage laws.  Defendants' Response at 24.  Plaintiff has not argued in further support of summary judgment on Defendants' Third Affirmative Defense.

Preliminarily, Defendant points to nothing establishing recognition of a lack of material loss as an affirmative defense to a federal or state labor law overtime wage violation, and the court's research reveals none.  Furthermore, the asserted defense is relevant not to liability, but to damages.  Toward that end, as discussed, Discussion, *supra*, at 16-21, numerous genuine issues of material fact preclude summary judgment on Plaintiff's overtime wage claims and a determination as to whether Plaintiff was improperly classified as an administrative employee exempt from federal and state overtime wage provisions will necessarily determine whether Plaintiff's classification caused her any material loss.  Accordingly, these same issues of fact preclude summary judgment on Defendants' putative Third Affirmative Defense on which Plaintiff's Motion should be DENIED.

### 4.    Fourth Affirmative Defense

Defendants' Fourth Affirmative Defense is that Plaintiff's claims are barred, in whole or in part, by the doctrines of laches, waiver, estoppel, or unclean hands.  Answer ¶ 46.  In support of summary judgment, Plaintiff argues not only that there is no basis for defenses of laches and unclean hands given that Plaintiff filed her Complaint within the applicable limitations period, but also that such defenses are applicable only to equitable claims, and not relevant to the money damages Plaintiff seeks.  Plaintiff's Memorandum at 18.  In opposition, Defendants argue there is at least an issue of fact

as to whether Plaintiff's claims are barred by laches, waiver, estoppel, or unclean hands given that Plaintiff was fully aware throughout her employment with Zenith of her exempt classification, yet never questioned or discussed the classification with anyone thus delaying Defendants' response to the claims Plaintiff now presents.  Defendants' Response at 24.  Plaintiff has not argued in further support of summary judgment on this defense.

Insofar as Defendants advance the doctrines of laches and unclean hands as affirmative defenses, both are equitable defenses inapplicable to Plaintiff's statutory claims.  *See Torres v. Gristede's Operating Corp.*, 628 F.Supp.2d 447, 464 (S.D.N.Y. 2008) (disallowing affirmative defenses of laches and unclean hands in action against former employer alleging violations of FLSA and NYLL overtime wage laws, and citing *Ikelionwu v. United States*, 150 F.3d 233, 238 (2d Cir. 1998) ("When a limitation on the period for bringing suit has been set by statute, laches will generally not be invoked to shorten the statutory period."), and *PenneCom B.V. v. Merrill Lynch & Co., Inc.*, 372 F.3d 488, 493 (2d Cir. 2004) ("the equitable powers of the court can never be exerted in behalf of one who has acted fraudulently, or who by deceit or any unfair means has gained an advantage.")).  Estoppel has been deemed by the Second Circuit as inconsistent with both the FLSA's language and policy.  *Id.* (citing *Caserta v. Home Lines Agency, Inc.*, 273 F.3d 943, 946 (2d Cir. 1959) ("An agreement by appellee not to claim overtime pay for the work here in question would be no defense to his later demanding it." (citing cases)).  Finally, the Second Circuit has held that an employee's right to overtime wages cannot be waived by agreement.  *Barfield*, 537 F.3d at 148 (holding nurse's knowledge that defendant employer hospital had policy against

overtime pay did not permit defendant to avoid paying nurse overtime for weeks when she worked more than 40 hours).  Thus, waiver is not available as an affirmative defense to Plaintiff's actions.  Accordingly, Plaintiff's Motion for summary judgment should be GRANTED as to  Defendant's Fourth Affirmative Defense.

### 5.      Fifth Affirmative Defense

In their Fifth Affirmative Defense, Defendants maintain Plaintiff's claims are barred, in whole or in part, as against Defendants Paris and Hornblass, neither of whom was Plaintiff's "employer" as defined under the FLSA or New York Labor Law.  Answer ¶ 47.  In support of summary judgment on this defense, Plaintiff argues both Hornblass and Paris were Plaintiff's "employers" as defined under the FLSA.  Plaintiff's Memorandum at 18-20.  In opposition, Defendants rely on their same arguments asserted in support of Defendants' Motion seeking partial summary judgment, *i.e.*, that Paris's role with Zenith does not constitute an "employer" under either the FLSA or New York Labor Law.  Defendants' Response at 24.[16]

As discussed in connection with Defendants' Motion seeking partial summary judgment that Paris's role within Zenith did not constitute that of an "employer" under relevant federal or state law, Discussion, *supra*, at 26-31, numerous genuine issues of material fact preclude summary judgment on Defendants' Motion.  These same issues of fact preclude summary judgment on Defendants' Fifth Affirmative Defense on which Plaintiff's Motion accordingly should be DENIED

---

[16] Defendants do not address whether Hornblass was an "employer" under the relevant law because of the automatic stay of the action as against Hornblass based on his Chapter 7 bankruptcy filing. Defendants' Response at 24 n. 3.  Notably, neither party addresses how they anticipate the eventual lifting of the automatic stay on the litigation upon the conclusion of Hornblass's bankruptcy proceedings will impact the litigation.

6.      **Sixth Affirmative Defense**

Defendants assert because they acted in good faith and with reasonable grounds to believe their actions were not in violation of the FLSA or New York Labor Law, Plaintiff's claims are barred, in whole or in part.  Answer ¶ 48.  In support of summary judgment, Plaintiff argues good faith does not absolve Defendants from liability for violations of the FLSA and NYLL overtime wage laws, and that a determination that an employer acted in good faith merely shortens the FLSA's statute of limitations from three years to two, but does not negate liability based on a non-willful violation. Plaintiff's Memorandum at 20-21.  In opposing summary judgment on this defense, Defendants argue that at a minimum, there exist issues of fact as to whether Defendants' actions in classifying Plaintiff's employment as exempt from the overtime wage provisions under federal and state laws, precluding a finding on summary judgment that Defendants could be liable under the FLSA for wage violations for three years, rather than for only two years.  Defendants' Response at 25.  Plaintiff has not responded in further support of summary judgment on Defendants' Sixth Affirmative Defense.

The parties' arguments regarding summary judgment on the Sixth Affirmative Defense establish agreement that should it be determined that Defendants' classification of Plaintiff's employment as salaried and exempt from overtime wages was improper under the FLSA and NYLL, whether such misclassification was done in good faith or was a willful violation is relevant only to whether the applicable statute of limitations under the FLSA is two years or three and, thus, to the extent of Plaintiff's damages.  As such, any finding that Defendants acted reasonably and in good faith by

relying on Paychex's classification of Plaintiff's employment as salaried and exempted as administrative employment is relevant to the damages issue, *i.e.*, whether Plaintiff can collect damages for two or three years prior to commencing action on August 2, 2012.  Moreover, because Plaintiff cannot have a duplicate recovery for the same hours under both the FLSA or NYLL, but is limited to recovering only under the statute providing the greatest amount of damages, *Jiao*, 2007 WL 4944767, at * 17, because the NYLL's six-year limitations period would provide for the greater damages, presumably any damages would be only under NYLL which provides for a six-year limitations period without consideration of willfulness or good faith, N.Y. Labor Law § 663(3) (McKinney 2015), although the question of good faith would be relevant to whether Defendants could avoid paying an additional amount as liquidated damages. N.Y. Labor Law § 663(1) (McKinney 2015).

Summary judgment on Defendant's Sixth Affirmative Defense thus should be DENIED.

### 7.      Seventh Affirmative Defense

For their Seventh Affirmative Defense, Defendants maintain Plaintiff was a salaried employee exempt from the overtime pay requirements of the FLSA and New York Labor Law.  Answer ¶ 49.  In support of summary judgment on this defense, Plaintiff relies on her arguments advanced in support of summary judgment on her overtime pay claims, Plaintiff's Memorandum at 21, and Defendants, likewise, rely on their arguments in opposition.  Defendants' Response at 25.  As with Defendants' Third Affirmative Defense, the same genuine issues of material fact precluding summary judgment on Plaintiff's federal and state overtime claims also preclude summary

judgment on the Seventh Affirmative Defense.  Accordingly, Plaintiff's Motion should be DENIED as to the Seventh Affirmative Defense.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 42), should be DENIED in part and GRANTED in part; Defendants' Motion (Dkt. 43), should be DENIED.  The case should be scheduled for trial.

Respectfully submitted,

/s/  *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      May 15th, 2018
            Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an</u> <u>extension of such time waives the right to appeal the District Court's Order.</u>** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      May 15<u>th</u>, 2018
                    Buffalo, New York